UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

MASON TENDERS DISTRICT COUNCIL       :
OF GREATER NEW YORK, et al.,
                                     :

                    Plaintiffs,      :      11 Civ. 5392 (DAB)(HBP)
                                     :
     -against-                              REPORT AND
                                     :      RECOMMENDATION

F.M.C. CONSTRUCTION, LLC,
                                     :

                    Defendant.
                                     :
---------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,

I.   Introduction

          Plaintiffs Mason Tenders District Council of Greater

New York (the "Union"), Mason Tenders District Council Welfare

Fund, Pension Fund, Annuity Fund, Training Fund (collectively,

the "Funds") and John J. Virga as the Funds' Director bring this

action against F.M.C. Construction, LLC ("FMC") for violations of

the Employment Retirement Income Security Act of 1974 ("ERISA"),

as amended, 29 U.S.C. §§ 1001, et seq., and the Labor Management

Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §§ 141 et

seq., for breach of contract, injunctive relief and for other

equitable relief under ERISA.  The complaint alleges that FMC breached its collective bargaining agreement with the Union and violated the Funds' trust agreements, ERISA and the LMRA by, among other things, failing to make certain contributions to the Funds as required by contract.

On August 10, 2012, the Honorable Deborah A. Batts, United States District Judge, referred this matter to me to conduct an inquest concerning plaintiffs' damages in connection with their claims against defendant FMC (Docket Item 14).  The inquest was ordered as a result of Judge Batts' Order, also dated August 10, 2012, finding FMC in default for failing to retain new counsel after the withdrawal of its former counsel (Docket Item 13).

Pursuant to the Order of Reference in this case, I issued a Scheduling Order on September 7, 2012 directing plaintiffs to serve and file proposed findings of fact and conclusions of law, along with evidentiary materials supporting their claim for damages, by November 6, 2012 (Docket Item 16 at ¶ 1).  My September 7, 2012 Scheduling Order further directed defendant to submit responsive materials by December 6, 2012.  Specifically, my Order provided:

> Defendants shall submit their response to Plain-
> tiff's submissions, if any, no later than December 6,
> 2012.  IF DEFENDANT (1) FAILS TO RESPOND TO PLAINTIFFS'

2

SUBMISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY
DECEMBER 6, 2012 AND REQUEST AN IN-COURT HEARING, IT IS
MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION
CONCERNING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN
SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING. See
Transatlantic Marine Claims Agency, Inc. v. Ace Ship-
ping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v.
ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir.
1989) ("[I]t [is] not necessary for the District Court
to hold a hearing, as long as it ensured that there was
a basis for the damages specified in a default judg-
ment.").

(Docket Item 16 at ¶ 2) (emphasis in original).

In Docket Item 17, I extended the deadline for plain-
tiffs' submissions to December 6, 2012, and, on that date,
plaintiffs submitted proposed findings of fact and conclusions of
law and several supporting declarations.  Despite being sent all
the Orders referenced above, FMC has not made any written submis-
sion to me, nor has it contacted my chambers in any way.  Because
all reasonable steps to provide notice to FMC have been taken and
it has not responded in any way, I make the following findings of
fact and conclusions of law on the basis of plaintiffs' submis-
sions alone.

II.  Findings of Fact

    A.   The Parties

        1.  The Funds are jointly-administered, multi-employer,
labor-management trust funds established and maintained pursuant

3

to various collective bargaining agreements in accordance with the LMRA Section 302(c)(5) and (c)(6), 29 U.S.C. § 186(c)(5), (c)(6).  The Funds are employee benefit plans within the meaning of the ERISA Section 3(1), 3(2), 3(3) and 502(d)(1), 29 U.S.C. §§ 1002(1), (2), (3) and 1132(d)(1), and multi-employer plans within the meaning of ERISA Sections 3(37) and 210, 29 U.S.C. §§ 1002(37) and 1060.  The Funds are authorized to maintain suits as independent legal entities under ERISA Section 501(d)(1), 29 U.S.C. § 1132(d)(1).  The Funds' purpose is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the Union.  The Funds are third-party beneficiaries to such collective bargaining agreements, as collectors and trustees of employers' contributions made pursuant to collective bargaining agreement between employers and the Union.  The Funds maintain their offices and are administered at Suite 600, 520 Eighth Avenue, New York, New York  10018-4196 (Complaint ("Compl.") ¶ 4[1]).

---

[1]As a result of defendants' default, all the allegations of the Complaint, except as to the amount of damages, must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Trans World
(continued...)

2.   John J. Virga, as the Funds' Director, is a fiduciary within the meaning of ERISA Sections 3(21) and 502, 29 U.S.C. §§ 1002(21) and 1132, and brings this action in his fiduciary capacity (Compl. ¶ 5).

3.   The Union is a labor organization within the meaning of the LMRA Section 301, 29 U.S.C. § 185, which represents employees in an industry affecting commerce as defined by the LMRA Section 501, 29 U.S.C. § 142, and ERISA Section 3(4), 29 U.S.C. § 1002(4).  The Union is the authorized agent of the Mason Tenders District Council Political Action Committee ("PAC") and, as such, collects the PAC contributions deducted from each employee's pay and forwards them to the PAC.  The Union maintains its offices and is administered at Suite 650, 520 Eighth Avenue, New York, New York  10018 (Compl. ¶ 6).

4.   At all times material hereto, FMC was and is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of ERISA Sections 3(5) and 515, 29 U.S.C. §§ 1002(5) and 1145, and was, and is, an employer

---

[1](...continued)
Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. East River Chinese Rest., 884 F.Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986) (Conner, D.J.).

in an industry affecting commerce within the meaning of the LMRA Section 301, 29 U.S.C. § 185 (Compl. ¶ 7).

5.   FMC, through its attorneys of record, confirmed to the Union by letter dated October 24, 2006 that it was a member of the Associated Brick Mason Contractors of Greater New York, Inc. (the "Association").  FMC remained a member of the Association through at least June 30, 2010 (Compl. ¶ 8; Declaration of Joseph Bianco, dated December 6, 2012 (Docket Item 19) ("Bianco Decl."), ¶ 3 & Ex. A thereto).

B.   The Agreement

6.   FMC, through its Association membership, was obliged to comply with the 2005-2008 Collective Bargaining Agreement (the "Agreement") executed by the Association and the Union (Compl. ¶ 9).

7.   The Agreement's initial term ran from July 1, 2005 through June 30, 2008.  The Agreement contains an "evergreen clause" that automatically renews the Agreement from year to year unless either party provides a written notice by certified mail at least sixty, but not more than ninety, days before the expiration date of the Agreement to modify, amend or terminate the Agreement (Compl. ¶ 10; Bianco Decl. ¶ 5 & Ex. B thereto at Article XII, Section 1).

8.   The Agreement remained in effect through at least June 30, 2010 because neither FMC nor the Union timely served notice of change upon the other party during the relevant 30-day windows (Compl. ¶ 11).

9.   Article VI, Section 4-7 of the Agreement required FMC to pay and/or submit the required monetary contributions and/or reports to the Funds.  Article VI, Section 17(a) also required FMC to permit the Funds and/or their designated repre-sentatives to conduct audits of FMC's books and records to search for additional contributions owed to the Funds (Compl. ¶ 12; Bianco Decl. Ex. B at Article VI, Sections 3-7, 13, 17(a); Declaration of Dominick Giammona, dated December 6, 2012 (Docket Item 21) ("Giammona Decl.") ¶¶ 5-6).

10.   The Agreement also requires FMC to pay the imputed costs of an audit if FMC is found to be "substantially delin-quent."  The Agreement provides that FMC is "substantially delinquent" if there is any deficiency in the payment of fringe benefit contributions in excess of 10% of the fringe benefit contributions paid to the Funds during the period that is the subject of the audit.  The Agreement calculates the imputed cost of the audit as the total audited deficiency, divided by 150 and multiplied by the number of months audited (Compl. ¶30; Bianco Decl. Ex. B at Article VI, Section 17(c); Giammona Decl. ¶ 8).

7

11.   The Agreement also required FMC to file employer contribution reports with the Funds and to permit and cooperate with the Funds, or their representatives, in conducting audits of FMC's books and records for the purpose of ensuring that the proper amount of fringe benefits are paid.  FMC failed to provide this cooperation for the period from April 1, 2010 through the present (Compl. ¶ 12; Bianco Decl. Ex. B. at Article VI, Section 17).

12.   The Agreement also requires FMC to deduct dues checkoffs and PAC contributions from the wages paid to FMC employees (1) who performed work within the trade and geograph-ical jurisdiction of the Union and (2) authorized such deductions in writing (Compl. ¶ 37; Bianco Decl. Ex. B at Article VI, Sections 3 and 13).

13.   The Agreement further requires FMC to pay the reasonable costs and attorney's fees incurred in bringing an action as a result of FMC's failure to pay the contractually required fringe benefit contributions (Compl. ¶ 21; Bianco Decl. Ex. B at Article VI, Section 17(f)(D)).

C.   <u>The Audit</u>

14.   Independent auditors from the accounting firm of Schultheis & Panettieri, LLP ("S&P") conducted a payroll compli-

ance audit of FMC's books and records for the period from February 28, 2006 through March 30, 2010 (the "Audit") (Giammona Decl. ¶ 7 & Ex. A thereto).

15.  As a result of the Audit, S&P concluded that FMC failed to remit $430,303.33 in fringe benefit contributions to the Funds for the time period covered by the Audit (Compl. ¶¶ 15, 25, 28; Giammona Decl. ¶ 7 & Ex. A thereto).

16.  As a result of the deficiencies identified in the preceding paragraph, FMC is "substantially delinquent" within the meaning of the Agreement and, therefore, liable for the imputed audit costs of $143,434.44 (Compl. ¶ 31; Bianco Decl. Ex. B at Article VI, Section 17(c); Giammona Decl. ¶ 8 & Ex. A thereto).

17.  Through November 30, 2013, FMC owes the Funds $133,385.59 in interest on the delinquent fringe benefits contributions calculated from the dates the fringe benefit contributions were due, calculated at the rate designated in 26 U.S.C. § 6621 (Supplemental Declaration of Deke Bond dated November 18, 2013 (Docket Item 23) ("Supp. Bond Decl.") ¶ 3).

18.  S&P also concluded that FMC failed to remit dues checkoffs due to the Union under the Agreement totaling $33,661.16 for the time period covered by the Audit (Compl. ¶¶ 16, 25; Giammona Decl. ¶ 7 & Ex. A thereto).

19.   S&P further determined that FMC failed to remit PAC contributions contractually due to the Union for the period of the Audit in the amount of $2,301.63 (Compl. ¶¶ 17, 28; Giammona Decl. ¶ 7 & Ex. A thereto).

20.   Through November 30, 2013 FMC owes the Union a total of $20,141.38 in interest on the unpaid dues checkoffs and PAC contributions, calculated at the rate of 9% pursuant to N.Y. C.P.L.R. § 5004 (Supp. Bond Decl. ¶ 5).

III.  Conclusions of Law

A.  Jurisdiction

21.   Because this action arises under ERISA and the LMRA, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132 and 29 U.S.C. § 185(c), respectively.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

22.   The Court has personal jurisdiction over the defendants because they maintain an office and do business in New York State.  See Laufer v. Ostrow, 55 N.Y.2d 305, 312-13, 434 N.E.2d 692, 696, 449 N.Y.S.2d 456, 460 (1982); Bryant v. Finnish National Airline, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 629 (1965).

10

B. <u>Liability</u>

23.  Section 1145 of Title 29 of the United States Code provides that "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  Plaintiffs have alleged that FMC was obligated to make contributions to the Funds under the Agreement and that FMC failed to make such contributions for the period from February 28, 2006 through March 30, 2010.  Because FMC is in default, plaintiffs have established FMC liability under ERISA.

24.  Section 502(g)(2) of ERISA provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

> (A) the unpaid contributions,

> (B) interest on the unpaid contributions,

> (C) an amount equal to the greater of--

>> (i) interest on the unpaid contributions, or

>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the

11

amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).  Where, as here, a violation is established, an award of the relief set forth in Section 502(g)(2) is mandatory.  Iron Workers District Council of Western N.Y. & Vicinity Welfare & Pension Fund v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995).

C.  Damages

25.  Even where, as here, defendants have defaulted the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

26.  To determine damages, a court may rely on detailed affidavits and documentary evidence in lieu of an evidentiary hearing.  Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); see Fed.R.Civ.P. 55(b)(2)(B) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate

judgment, it needs to . . . determine the amount of damages . . .
.") (emphasis added); accord Trustees of Mason Tenders District
Council Welfare Fund, Pension Fund, Annuity Fund & Training
Program Fund v. Stevenson Contracting Corp., 05 Civ. 5546
(GBD)(DF), 2008 WL 3155122 at *4 (S.D.N.Y. June 19, 2008) (Free-
man, M.J.) (Report & Recommendation), adopted, 2008 WL 2940517
(S.D.N.Y. July 29, 2008) (Daniels, D.J.).

     1.  Unpaid Contributions

     27.  As noted above, the accounting firm, S&P conducted
an audit of FMC's books and records in the fall of 2010 for the
period from February 28, 2006 through March 30, 2010.  As a
result of that audit, S&P concluded that FMC failed to remit:
(a) $430,303.33 in fringe benefit contributions to the Funds; (b)
dues checkoffs due to the Union under the Agreement totaling
$33,661.16, and (c) PAC contributions contractually due to the
Union for the period of the Audit in the amount of $2,301.63
(Giammona Decl. ¶ 7 & Ex. A thereto).  FMC is liable to the Union
and the Funds for the total of these amounts -- $466,266.12.  As
required by the Agreement.  FMC is also liable for the imputed
cost of the audit -- $143,434.44 (Giammona Decl. ¶ 8 & Ex. A
thereto).

2. Interest

28. Section 502(g)(2)(B) of ERISA, 29 U.S.C. §
1132(g)(2)(B), requires that the Court award interest on unpaid
contributions at either the rate provided in the plan or the rate
prescribed by 26 U.S.C. § 6621. See Lanzafame v. A.B.M. Con-
tracting Servs. Corp., 09 Civ. 4710 (FB)(VVP), 2010 WL 3924670 at
*3 (E.D.N.Y. Sept. 7, 2010) (Report & Recommendation), adopted,
2010 WL 3909458 (E.D.N.Y. Sept. 29, 2010); Vigra v. Big Apple
Constr. & Restoration Inc., 590 F. Supp. 2d 467, 473 (S.D.N.Y.
2008) (McMahon, D.J.); Trustees of Mason Tenders District Council
Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund
v. Stevenson Contracting Corp., supra, 2008 WL 3155122 at *4;
Lewart v. Woodhull Care Ctr. Assocs., 549 F. Supp. 879, 885-86
(S.D.N.Y. 1982) (Conner, D.J.). The Agreement provides that the
rate of interest to be used in making this calculation is the
rate of interest prescribed by 26 U.S.C. § 6621 (Bianco Decl. Ex.
B at Article VI, Section 17(e)). FMC is liable to the Funds for
interest on the unpaid fringe benefit contributions at the rate
of interest prescribed by 26 U.S.C. § 6621 which equals
$133,385.59 through November 30, 2013 (Supp. Bond Decl. ¶ 3).

29. As a matter of contract law, through December 6,
2012 FMC owes the Union a total of $20,141.38 in interest on the

14

unpaid dues checkoffs and PAC contributions, calculated at the rate of 9% pursuant to N.Y. C.P.L.R. § 5004 (Supp. Bond Decl. ¶ 5).

      3.  <u>Liquidated Damages</u>

      30.  Pursuant to Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), the Funds are also entitled to an award of liquidated damages in an amount equal to the greater of either (i) the interest on the unpaid contributions or (ii) if the plan provides, an amount not greater than twenty percent of the unpaid benefit contributions.  <u>Architectural & Ornamental Iron Workers Local Union No. 580 v. JMB Corp.</u>, 667 F. Supp. 134, 135 (S.D.N.Y. 1987); <u>O'Hare v. General Marine Transp. Corp.</u>, 564 F. Supp. 1064, 1070 (S.D.N.Y. 1983), <u>aff'd</u>, 740 F.2d 160 (2d Cir. 1984). Pursuant to the Agreement, the Funds are entitled to liquidated damages in an amount equal to the interest awarded (Bianco Decl. Ex. B at Article VI, Section 17(f)(C)), or $133,385.59 (Supp. Bond Decl. ¶ 4).

      4.  <u>Attorneys' Fees and Costs</u>

      31.  Finally, pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), the Funds are entitled to an award of their attorneys' fees and costs.  Plaintiffs also seek $11,477.50 in attorneys' fees representing a total of 71.1 hours

of legal work and $390.00 in costs (see Declaration of Deke Bond Esq., dated December 6, 2012 (Docket Item 20) ("Bond Decl.") ¶¶ 7, 17).

32.    "Both [the Second Circuit] and the Supreme Court have held that the lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011), citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010) and Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008).

33.    The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984); accord Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).

34.    In determining a reasonable hourly rate, the court should consider not only the rates approved in other cases in the district, but should also consider any evidence offered by the

16

parties.  Farbotko v. Clinton Cnty., 433 F.3d 204, 208-09 (2d Cir. 2005).

35.   The court is also free to rely on its own familiarity with prevailing rates in the district.  A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. New York State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

36.   "The Second Circuit has [also] held that in determining the reasonable hourly rate, district courts should [] assess case-specific considerations, including the factors articulated by the Fifth Circuit in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93 . . . (1989)."[2]  Dunn v. Advanced Credit Recovery Inc., 11 Civ. 4023 (PAE)(JLC), 2012 WL 676350 at *5 (S.D.N.Y. Mar. 1, 2012) (Cott,

---

[2]The factors set forth in Johnson v. Ga. Highway Express, Inc. include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the attorney's fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

M.J.) (Report & Recommendation), adopted, 2012 WL 1114335
(S.D.N.Y. Apr. 3, 2012) (Engelmayer, D.J.).

 37.  In all cases, "the fee applicant has the burden of
showing by 'satisfactory evidence -- in addition to the attor-
ney's own affidavits' -- that the requested hourly rates are the
prevailing market rates." Farbotko v. Clinton Cnty., supra, 433
F.3d at 209, quoting Blum v. Stenson, supra, 465 U.S. at 895-96
n.11.

 38.  In determining reasonable hourly rates, a court
should first examine the attorneys' experience.  Kahlil v.
Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 475
(S.D.N.Y. 2009) (Holwell, D.J.), citing Marisol A. ex rel. Forbes
v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (Ward,
D.J.).

 39.  In addition, courts "should generally use 'the
hourly rates employed in the district in which the reviewing
court sits' in calculating the presumptively reasonable fee."
Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of
Albany, supra, 522 F.3d at 192-93, quoting In re "Agent Orange"
Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).

40.   The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records.  See Forschner Group, Inc. v. Arrow Trading Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to "its own familiarity with the case and its experience generally . . . .  Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court."  AFP Imaging Corp. v. Phillips Medizin Sys., No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994) (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting Clark v. Frank, 960 F.2d 1146, 1163 (2d Cir. 1992) quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985))).
>
>                         *     *     *
>
> Finally, billing judgment must be factored into the equation.  Hensley, 461 U.S. at 434; DiFilippo, 759 F.2d at 235-36.  If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours.  In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (stating that "in cases in which substantial numbers of voluminous fee petitions are filed, the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting Carey, 711 F.2d at 1146)); see also United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee

award to account for vagueness in documentation of
certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00
Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)
(Preska, D.J.); accord Hensley v. Eckerhart, 461 U.S. 424, 434
(1983); see also Gierlinger v. Gleason, 160 F.3d 858, 876 (2d
Cir. 1998); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98
(2d Cir. 1997); Finch v. New York State Office of Children &
Family Servs., 861 F. Supp. 2d 145, 151 & n.29 (S.D.N.Y. 2012)
(Scheindlin, D.J.); Sulkowska v. City of New York, 170 F. Supp.
2d 359, 365 (S.D.N.Y. 2001) (Schwartz, D.J.).

        41.   The party seeking fees bears the burden of estab-
lishing that the number of hours for which compensation is sought
is reasonable.  See Cruz v. Local Union No. 3 of the Int'l Bhd.
of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing
Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevo-
lent Ass'n v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202
(SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003)
(Scheindlin, D.J.), citing Blum v. Stenson, supra, 465 U.S. at
897.

        42.   In support of their request for attorneys' fees,
plaintiffs have submitted a declaration from Deke Bond, Esq., a
senior associate with the firm retained to represent defendants

(Bond Decl.).  The declaration states that plaintiffs are seeking to recover for 71.1 hours of legal services, broken down as follows:

a.  Deke Bond, Esq., who graduated from law school in 1998, spent 28.7 hours on this case billing at a rate of $200 per hour (Bond Decl. ¶ 13 & Ex. B. thereto).

b.  Jeffrey Olshansky, Esq., who graduated from law school in 2010, spent 25.3 hours on this case billing at a rate of $125 per hour (Bond Decl. ¶ 14 & Ex. C. thereto).

c.  Isaac Glovinsky, Esq., who also graduated from law school in 2010, spent 11.9 hours on this case billing at a rate of $125 per hour (Bond Decl. ¶ 15 & Ex. D. thereto).

d.  Andrew A. Gorlick, Esq., who graduated from law school in 1985, spent 4.7 hours on this case at a billing rate $225 per hour (Bond Decl. Ex. E).

e.  Paralegal Tiffany Lewis spent one-half hour working on this case at a billing rate of $60 per hour (Bond Decl. Ex. F).

43.  There are several issues with plaintiff's fee application.  First, although plaintiffs have submitted computer-

ized printouts that purport to contain the dates on which ser-
vices were rendered, the nature of the services, the identity of
the individual performing the services and the amount of time
expended, the accompanying declaration does not identify the
source of the information in the printouts.  There can be no
question that it is the law of this Circuit that any application
for attorneys' fees must be accompanied by contemporaneously
maintained time records.  <u>Scott v. City of New York</u>, 643 F.3d 56,
57 (2d Cir. 2011) (describing the requirement of contemporaneous
time records as a "hard-and-fast rule").  There can also be no
question that a computerized compilation of contemporaneously
maintained time records, rather than the original time records
themselves, is sufficient to meet this requirement.  <u>Cruz v.</u>
<u>Local Union No. 3 of Int'l Broth. of Elec. Workers</u>, 34 F.3d 1148,
1160-61 (2d Cir. 1994).  The difficulty with the plaintiffs'
submission is that there is no representation that the computer-
ized compilations are derived from contemporaneously maintained
time records; all I am told is that the compilation was generated
in the ordinary course of plaintiffs' counsel's business (<u>see</u>
Bond Decl. ¶¶ 13-15).  Nevertheless, similar facts were presented
in <u>Viva Video, Inc. v. Cabrera</u>, 9 F. App'x 77, 81 (2d Cir. 2001),
and in that case, the Court of Appeals found a computerized
summary listing the date, attorney, rate, hours expended and a

description of the work performed to be adequate, notwithstanding a lack of evidence tying the summary to contemporaneously main-tained records.  Accordingly, I find plaintiff's computerized summary sufficient to meet the requirement of computerized time records.

44.  The time records are, however, deficient in part due to the vague nature of the descriptions of the services performed.  For example, the descriptions of the services per-formed by attorney Bond include:  "Document Review/Analysis - Docket," "Document Prep/Revise/Proof - Discovery Requests," "Document Prep/Revise/Proof - Interrogatories to Defendant" (Bond Decl. Ex. B).  The descriptions give the impression that they are boilerplate descriptions generated by drop down menus in a time-management program, and they do not provide much information concerning what the attorney actually did.  Given the vagueness of these descriptions, I conclude that a 10% reduction in the fees sought is appropriate.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998) (upholding 20% reduc-tion in billed time for vagueness and other deficiencies where many time entries merely read "letter to court," "staff confer-ence," and "work on motion"); United States Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approv-ing a 10% reduction of total fee award to account for vagueness

in documentation of certain time entries); <u>Tucker v. Mukasey</u>, 03
Civ. 3106 (LTS)(FM), 2008 WL 2544504 at *1-*2 (S.D.N.Y. June 20,
2008) (Swain, D.J.) (applying percentage reduction in hours
billed on basis of vagueness because entries "fail[ed] to de-
scribe adequately the nature of the calls, the contents of the
reports or documents, or the topics of the discussions"); <u>Sea</u>
<u>Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.</u>, 277 F. Supp. 2d
323, 326 (S.D.N.Y. 2003) (Marrero, D.J.) (reducing fees by 15%
for time entries that were vague or improper); <u>People ex rel.</u>
<u>Vacco v. RAC Holding, Inc.</u>, 135 F. Supp. 2d 359, 364-65 (N.D.N.Y.
2001) (reducing total lodestar award in civil rights class action
by 10% to account for vague billing entries); <u>Sabatini v.</u>
<u>Corning-Painted Post Area Sch. Dist.</u>, 190 F. Supp. 2d 509, 522
(W.D.N.Y. 2001) (finding descriptions such as "hearing prepara-
tion," "telephone conference with client," and "review records"
too vague); <u>Marisol A. ex rel. Forbes v. Giuliani</u>, <u>supra</u>, 111 F.
Supp. 2d at 396-97 & n.10 (concluding that "some of the time
entries are so vague that the Court is unable to determine
whether the time was reasonably expended"); <u>Valmonte v. Bane</u>, 895
F. Supp. 593, 601-02 (S.D.N.Y. 1995) (Schwartz, D.J.) (reducing
lodestar by 20% due to vague billing entries).

    45. Finally, plaintiffs' submission concerning their
attorney's fees is also troubling because it fails to disclose

any information concerning the qualifications of its attorneys. The reasonableness of an attorney's hourly rate is usually related to, among other things, the attorney's experience and training.  Plaintiffs have told me nothing about their attorney's experience; the meager information set forth in paragraph 42 was derived by me from a search of internet sources.  Nevertheless the fees sought appear to be extremely reasonable, ranging from $125 per hour for a 2010 law school graduate to $225 per hour for a 1985 law school graduate.  I conclude that the rates requested are reasonable and are commensurate with, if not lower than, rates charged for similar ERISA work in this district.  See George v. ECDO, Inc., 10 Civ. 1762 (DAB)(JCF), 2012 WL 3822230 at *3 (S.D.N.Y. July 30, 2012) (Francis, M.J.) (Report & Recommendation) (approving rate of $300 per hour in an ERISA case), adopted, 2012 WL 3835519 (S.D.N.Y. Sept. 4, 2012) (Batts, D.J.); The Annuity, Welfare, Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers v. Qualcon Constr., LLC, 10 Civ. 4994 (RMB)(JCF), 2011 WL 2207519 at *3 (S.D.N.Y. Aug. 29, 2011) (Francis, M.J.) (Report & Recommendation) (approving rate of $300 per hour in ERISA case), adopted, 2011 WL 2207546 (S.D.N.Y. June 6, 2011) (Berman, D.J.); New York District Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (Pauley,

25

D.J.) (in ERISA action, approving rates of $425 per hour for partners, $300 per hour for associates and $150 per hour for paralegals); Sheehan v. Metropolitan Life Ins. Co., 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (Haight, D.J.) (approving hourly rates of $425 for senior partner, $375 for junior partner, $300 for associates and $150 for paralegals); United Nat'l Retirement Fund v. Fairbrooke Co., Inc., 04 Civ. 2354 (GBD)(RLE), 2006 WL 770487 at *3 (S.D.N.Y. Mar. 23, 2006) (Daniels, D.J.) (adopting Report & Recommendation of Ellis, M.J.) (approving hourly rate of $210).  Thus, no adjustment to the hourly rates sought is necessary.

46.  I do conclude, however, that the number of hours -- approximately 71 hours -- expended by counsel and paralegals in this action is excessive.  This matter is a straightforward ERISA action in which the defendants have defaulted.  The time sheets submitted reflect only the preparation of the complaint and the motion for a default judgment; a claim of 71 hours for the preparation of these basic documents appears to be excessive.

47.  Nonetheless, only a modest reduction of fees is warranted in light of the fact that a majority of the hours requested accounts for work performed by junior associates and paralegals, both of whom billed at lower hourly rates.

48.   Accordingly, I conclude that the hours requested
should be reduced by an additional 10%.  See In re "Agent Orange"
Product Liab. Litig., supra, 818 F.2d at 237.

49.   Applying a 20% reduction to the hours for which
compensation sought, I recommend that plaintiffs be awarded
$9,182.00 in attorneys' fees, calculated as follows:

| Attorney | Original Request | Reduced Award (20% reduction in hours) |
|---|---|---|
| Deke Bond | $5,740.00 (28.7 hours at $200 per hour) | $4,592.00 (22.96 hours at $200 per hour) |
| Jeffrey Olshansky | $3,162.50 (25.3 hours at $125 per hour) | $2,530.00 (20.24 hours at $125 per hour) |
| Isaac Glovinsky | $1,487.50 (11.9 hours at $125 per hour) | $1,190.00 (9.52 hours at $125 per hour) |
| Andrew Gorlick | $1,057.50 (4.7 hours at $225 per hour) | $846.00 (3.76 hours at $225 per hour) |
| Tiffany Lewis (Paralegal) | $30.00 (0.5 hours at $60 per hour) | $24.00 (0.4 hours at $60 per hour) |
| Total: | $11,477.50 | $9,182.00 |

50.   Plaintiffs also seek the award of costs and
expenses incurred during this action.  Under ERISA, an award of
costs in successful actions is mandatory.  29 U.S.C. §
1132(g)(2)(D).

51.  An award of costs "'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal citation omitted); accord LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); Trustees of Local 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 591 (E.D.N.Y. 2011); Annuity, Welfare, Apprenticeship Skill Improve-ment & Safety Funds of Int'l Union of Operating Engineers of Local 15, 15A, 15C, and 15D v. Persico Contracting & Trucking, Inc., 10 Civ. 5221 (JGK), 2011 WL 2848151 at *6 (S.D.N.Y. July 15, 2011) (Koeltl, D.J.).

52.  Reasonable costs include court filing fees and expenses associated with service of process, as well as costs for photocopies and postage necessary for the litigation.  See, e.g., Lanzafame v. Toquir Contracting, Inc., 545 F. Supp. 2d 255, 258 (E.D.N.Y. 2007).

53.  Plaintiffs seek costs in the amount of $390.00, comprised of $350 for filing fees, $40 for service of process (Bond Decl. ¶ 17).

54.  Accordingly, I recommend that the Plaintiffs be awarded $390.00 in costs.

28

IV.   Conclusion

For the reasons set forth above, I recommend that judgment be entered against FMC, in the amount of $906,185.12, which consists of (1) $430,303.33 in unpaid fringe benefit contributions; (2) $33,661.16 in unpaid dues checkoffs; (3) 2,301.63 in unpaid PAC contributions; (4) $143,434.44 for the imputed cost of the audit; (5) interest on the unpaid fringe benefit contributions in the amount of $133,385.59 through November 30, 2013; (6) liquidated damages in the amount of $133,385.59; (7) interest on unpaid dues checkoffs and PAC contributions in the amount of $20,141.38 through November 30, 2013; (8) $9,182.00 in attorneys' fees and $390.00 in costs and expenses.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street,

Room 2510, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN
FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**
PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155
(1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir.
1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054
(2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.
1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.
1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        November 22, 2013

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Andrew A. Gorlick, Esq.
Deke Bond, Esq.
Gorlick, Kravitz & Listhaus, P.C.
4th Floor
17 State Street
New York, New York  10004

F.M.C. Construction, LLC
110 Wall Street, #2
New York, New York  10005